United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 08, 2026

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-35378** |
| **TOCO HOLDINGS, L.L.C.,** *et al.*, | § | |
| Debtors. | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION SUSTAINING
## OBJECTION TO PROOF OF CLAIM
## <u>(RELATES TO ECF NO. 78)</u>

### BACKGROUND

Toco Warranty Corp. (hereinafter "Toco Warranty") began operations in 2012 in the vehicle service contract industry.[1]   On or around November 14, 2018, Toco Holdings, L.L.C.  (hereinafter "Toco Holdings") acquired Toco Warranty (together with Toco Holdings, the "Debtors") from AmTrust Warranty Holdings, LLC, an affiliate of AmTrust North America, Inc. (hereinafter "AmTrust").[2]  Toco Holdings is a holding company and has no employees or direct operations.[3]  The vehicle services contract industry is a business fundamentally built on three distinct pillars: (i) marketing, (ii) administration, and (iii) the obligor, which is the risk-bearing entity.[4]  Toco Warranty's core business is to act as the marketer and administrator for these service contracts.[5]

Prior to the 2018 acquisition, Noteh Berger (hereinafter "Mr. Berger"), a former employee of AmTrust, was allegedly slated to purchase Toco Warranty from AmTrust.[6]  As part of the sale of Toco Warranty to Toco Holdings, Mr. Berger allegedly assigned his right to purchase Toco Warranty to Toco Holdings in exchange for post-

---

[1] ECF No. 13 at ¶ 1.

[2] *Id.*

[3] *Id.*

[4] *Id.* at ¶ 2.

[5] *Id.*

[6] ECF No. 78-4 Ex. D at ¶ 10.

1 / 24

acquisition employment as CEO of Toco Warranty, with an annual salary of $350,000, and post-acquisition employment as manager of Toco Holdings with a right to share in the profits of Toco Holdings.[7]

On March 25, 2020, the Debtors filed a lawsuit against Mr. Berger in the 11th Judicial District Court of Harris County, Texas, asserting claims for breach of contract, breach of fiduciary duty, and fraud (hereinafter the "Texas Litigation").[8] On June 16, 2020, Mr. Berger filed a lawsuit against the Debtors in the Superior Court of California, Los Angeles County, asserting nine causes of action for (i) indemnification, (ii) breach of employment contract, (iii) breach of profit-sharing contract, (iv) constructive fraudulent transfer, (v) interference with contract, (iv) interference with prospective economic advantage, (vii) accounting, (viii) promissory fraud, and (ix) breach of fiduciary duty (hereinafter the "California Litigation").[9]   The Texas and California Litigations proceeded on dual tracks over the course of the next four years.

On November 18, 2024, Mr. Berger filed the Verified Opposed Motion for Continuance (hereinafter the "Motion for Continuance") in the Texas Litigation, seeking a continuation and delay of the scheduled trial in the Texas Litigation.[10]  In the Motion for Continuance, Mr. Berger argued the California Litigation should proceed to trial in August, 2025, ahead of the Texas Litigation, because the California Litigation would result in a resolution of "all outstanding issues between the [P]arties," whereas "the Texas Litigation occurring first would still require Plaintiffs and Defendants to appear in the California Case."[11] According to Mr. Berger in his Motion for Continuance, he was asserting three causes of action against the Debtors in the Texas Litigation, while asserting the same three causes of action in the California Litigation plus an additional six.[12]  Based on Mr. Berger's Motion for Continuance,

---

[7] *Id.* at ¶ 12.
[8] *Id.* at ¶ 9.
[9] *Id.* at 5.
[10] ECF No. 78-2 Ex. B.
[11] *Id.* at ¶ 3.
[12] *Id.*

the Texas state court granted the continuance to allow the California Litigation to proceed to trial ahead of the Texas Litigation.[13]

On June 10, 2025, Mr. Berger voluntarily dismissed without prejudice his causes of action for breach of profit-sharing contract, constructive fraudulent transfer, interference with contract, interference with prospective economic advantage, accounting, and breach of fiduciary duty from the California Litigation (hereinafter the "Dismissed Causes of Action").[14]   His causes of action for indemnification, breach of employment contract, and promissory fraud remained pending.

On August 22, 2025, the jury in the California Litigation returned a verdict for Mr. Berger against the Debtors in the amount of $1,518,799.00.[15]  The verdict states that the court found for Mr. Berger on his cause of action for breach of contract (breach of covenant of good faith and fair dealing), and against him for promissory fraud.[16]

On September 12, 2025, Toco Holdings filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code.[17]

On September 18, 2025, the Superior Court of Los Angeles County entered a judgment against Toco Warranty in the amount of $1,518,799.00 and expressly reserved that attorney's fees, if allowed under law, would be decided by post-judgment motion.[18]   The Los Angeles court could not enter judgment against Toco Holdings because the automatic stay under § 362 of the Bankruptcy Code had been imposed at that time.[19]  On September 25, 2025, Toco Warranty filed its own voluntary petition under Subchapter V of Chapter 11.[20]

---

[13] ECF No. 78-3 Ex. C.
[14] ECF No. 88-3 Ex. 2.
[15] ECF No. 88-4 Ex. 3 at ¶ 14.
[16] *Id.* at ¶¶ 7, 13; ECF No. 88-5 Ex. 4 at 3.
[17] ECF No. 1.
[18] ECF No. 88-5 Ex. 4 at 3–4.
[19] *Id.*
[20] Case No. 25-03811, ECF No. 1.

On November 20, 2025, Mr. Berger filed a proof of claim in the Debtors' jointly administered bankruptcy cases, asserting a putative claim of $36,309,309.46 against the Debtors.[21] The proof of claim breaks down as follows:

| Description | Period | Amount |
|---|---|---|
| State court verdict (against Toco Holdings, LLC) and judgment (against Toco Warranty Corp.) | 2018-2025 | $1,518,799.00 |
| Attorneys' fees from state court case | 2020-2025 | $312,510.46 |
| Attorneys' fees in bankruptcy | 2025-2026 | $160,000.00 |
| Client's 20% share of profits that the bankrupts wrongly withheld from him | 2021 | $250,000.00 |
| Client's 20% share of profits that the bankrupts wrongly withheld from him | 2022 | $1,296,000.00 |
| Client's 20% share of profits that the bankrupts wrongly withheld from him | 2023 | $1,512,000.00 |
| Client's 20% then 30% share of profits (upon corporation receiving $3.5 million, which occurred in 2024) that the bankrupts withheld from him | 2024 | $2,140,000.00 |
| Client's 30% share of profits that the bankrupts wrongly withheld from him | 2025 | $3,640,000.00 |
| Client's 30% share of profits that the bankrupts wrongly withheld from him | 2026 | $3,640,000.00 |
| Client's 30% share of profits that the bankrupts wrongly withheld from him | 2027 | $3,640,000.00 |
| Client's 30% share of profits that the bankrupts wrongly withheld from him | 2028 | $3,640,000.00 |
| Client's 30% share of profits that the bankrupts wrongly withheld from him | 2029 | $3,640,000.00 |
| Client's 30% share of profits that the bankrupts wrongly withheld from him | 2030 | $3,640,000.00 |
| Client's 30% share of profits that the bankrupts wrongly withheld from him | 2031 | $3,640,000.00 |

[21] ECF No. 78-1 Ex. A.

| | | |
|---|---|---|
| Client's 30% share of profits that the bankrupts wrongly withheld from him | 2032 | $3,640,000.00 |
| **Total** | | **$36,309,309.46**[22] |

On December 22, 2025, the Debtors filed the above captioned Objection to Claim Number 2 by Claimant Noteh Berger (hereinafter the "Objection").[23]  The Debtors objected to Mr. Berger's proof of claim on grounds that certain portions of the $36 million figure were not supported by evidence, that certain portions were otherwise barred under principles of res judicata and collateral estoppel with respect to the prior California Litigation, and that certain portions were simply not recoverable from the Debtors.[24]

According to the Debtors, Mr. Berger attempted to assert amounts in his proof of claim based on the Dismissed Causes of Action in the California Litigation.[25]  The Debtors argue res judicata should bar relitigating those claims because (i) the same three parties (Mr. Berger, Toco Warranty, and Toco Holdings) were involved in the California Litigation, (ii) there is a final judgment entered in the California Litigation that has been fully litigated, and (iii) Mr. Berger's proof of claim is merely a continuation of the same facts and claims already litigated (or that should have been litigated) in the California Litigation.[26]

The Debtors argue Mr. Berger should be collaterally estopped from relitigating issues pertaining to the Dismissed Causes of Action, particularly because Mr. Berger represented to the Texas state court in his Motion for Continuance that an adjudication of the California Litigation would resolve all claims between the Parties.[27]  According to

---

[22] *Id.* at 5.
[23] ECF No. 78.
[24] *Id.* at ¶ 1.
[25] *Id.* at ¶¶ 18–20.
[26] *Id.* at ¶ 19.
[27] *Id.* at ¶ 20.

the Debtors, Mr. Berger's claim should be reduced to $1,518,799.00 to reflect only the state court judgment, and the remaining approximately $34.8 million should be disallowed.[28]

On January 21, 2026, Mr. Berger filed a Response to the Debtors' Objection.[29]  In his Response, Mr. Berger takes issue with the Debtors' reliance on the Declaration of Todd Early (hereinafter "Mr. Early") in their Objection, asserting that because Mr. Early's statements therein are almost entirely legal conclusion, the Debtors failed to provide sufficient evidence to support their objection.[30]  According to Mr. Berger, Mr. Early in his Declaration provides no knowledge of the extensive facts claimed in the Objection, no authentication of exhibits, and no declaration supporting the history of the Debtors or the litigations with Mr. Berger.[31]

With respect to the Debtors' res judicata argument, Mr. Berger argues that doctrine does not apply to causes of action dismissed before trial, and therefore by extension res judicata does not apply to causes of action not submitted to the jury.[32]  According to Mr. Berger, a dismissal without prejudice does not constitute a final determination on the merits.[33]   Here, because Mr. Berger voluntarily dismissed the six Dismissed Causes of Action in the California Litigation, the California state court did not reach a final determination on the merits as to those claims.  Therefore, according to Mr. Berger, res judicata is inapplicable as to the Dismissed Causes of Action.[34]

Specifically with respect to Mr. Berger's proof of claim amounts for attorney's fees, Mr. Berger asserts that the state court judgment explicitly allowed him to collect attorney's fees via post-judgment

---

[28] *Id.* at ¶ 21.
[29] ECF No. 88.
[30] *Id.* at 2–3.
[31] *Id.*
[32] *Id.* at 3–4.
[33] *Id.*
[34] *Id.*

motion.[35]  Therefore, according to Mr. Berger, the California state court found for him on his claim for indemnification, which presumably entitles him to recover from the Debtors in their bankruptcy.[36]

On February 2, 2026, the Debtors filed a Reply.[37]  In their Reply the Debtors rebuff Mr. Berger's assertion that the Objection lacked sufficiency of evidence because the Debtors submitted competent record materials—namely the California complaint, the special verdict, the judgment, and Mr. Berger's Motion for Continuance—which should be enough to shift the burden of proof back to Mr. Berger to prove the validity of his claim.[38]  In the Debtors' view, this issue turns solely on questions of law.[39]

The Debtors argue that under California state preclusion doctrine, once a final judgment is entered as to claims between the same parties on the same dispute, claim preclusion bars relitigating claims arising from the same subject matter or same primary rights that were raised or, with diligence, could have been raised in the initial litigation.[40]  According to the Debtors, Mr. Berger cannot voluntarily dismiss his profit-sharing actions before trial, litigate to finality other closely related actions based on employment-contract theories, then attempt to expand his bankruptcy claim with those pre-judgment theories he elected not to pursue.[41]  The Debtors argue such conduct is not permissible under California courts' anti-claim-splitting doctrine within the "primary rights" theory of claim preclusion.[42]

Applied here, the Debtors argue California's anti-splitting doctrine means once the California court entered a final judgment resolving the primary right at issue in Mr. Berger's "employment/profit

---

[35] *Id.* at 4.
[36] *Id.*
[37] ECF No. 92.
[38] *Id.* at ¶ 1.
[39] *Id.* at ¶ 4.
[40] *Id.* at ¶ 5.
[41] *Id.* at ¶ 5.
[42] *Id.* at ¶ 6.

dispute," any pre-judgment theories seeking additional relief for the same harm asserted there were merged or barred, even if they were previously dismissed without prejudice or recast under different labels.[43]   According to the Debtors, only truly later-accruing, post judgment rights escape claim preclusion, and those must be supported with competent facts and law to justify claim allowance in the Debtors' Chapter 11 cases.[44]   Further, the Debtors argue that Mr. Berger's claim for any post-judgment profit sharing actions that may have accrued on a solely post-judgment basis were not alleged with sufficient factual context to apprise a trustee, the Parties, or the Court of the origin and basis of the asserted liability.[45]   According to the Debtors, that insufficiency serves as grounds for the Court to either disallow any alleged post-judgment profit-sharing components reflected in the proof of claim, or, in the alternative, deny those portions and direct Mr. Berger to file a conforming amended claim that attaches the governing agreement and provides period-by-period calculations supported by financial data.[46]

With respect to the two asserted portions for attorney's fees, the Debtors clarify that the California court judgment did not find for Mr. Berger on his claim for indemnification, but rather expressly provides that attorney's fees, if allowed by law, would be decided by post-judgment motion.[47]   According to the Debtors, that boilerplate reservation neither adjudicates any indemnification entitlement nor awards fees.[48]  The Debtors argue that under § 502(b)(1), a claim must be enforceable under applicable law as of the petition date in order to be an allowable claim.[49]  According to the Debtors, Mr. Berger's asserted portion for "attorney's fees in the state court case" is not an enforceable debt because there is no record awarding him fees in the California

---

[43] *Id.* at ¶¶ 8, 12.
[44] *Id.* at ¶ 12.
[45] *Id.* at ¶¶ 17–18.
[46] *Id.* at 18.
[47] *Id.* at ¶¶ 15–16.
[48] *Id.* at ¶ 15.
[49] *Id.*

Litigation.[50]   Similarly with respect to his purported claim for "attorney's fees in bankruptcy," Mr. Berger identifies no contract or statute shifting fees associated with litigating his claim in the Debtors' Chapter 11 cases, and therefore that portion of his proof of claim is not allowable under § 502 and must be disallowed.[51]

On March 9, 2026, the Court held a Hearing on confirmation of the Debtors' Plan of Reorganization (hereinafter the "Plan").[52]   The Court also heard argument on the Objection.[53]   At the conclusion of the Hearing the Court confirmed the Debtors' Plan and took the Objection under advisement.[54]

## JURISDICTION

28 U.S.C. § 1334 provides the District Courts with jurisdiction over this proceeding.   28 U.S.C. § 157(b)(1) states "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."   This Court has jurisdiction over this proceeding as it is a core proceeding the Court can consider under 28 U.S.C. § 157(b)(2)(B).   The Court has post-confirmation jurisdiction over this matter as it "pertains to the implementation or execution of the plan."   *Craig's Stores of Tex., Inc. v. Bank of La. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001); 11 U.S.C. § 1142(b).   This proceeding has been referred to the Bankruptcy Court under General Order 2012-6.   The Court has constitutional authority to enter final orders and judgments.   *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011).   And venue is proper in this District pursuant to 28 U.S.C. § 1408.

---

[50] *Id.*
[51] *Id.* at ¶ 16.
[52] ECF No. 127.
[53] *Id.*
[54] *Id.*

## LEGAL STANDARD

"A claim or interest, proof of which is filed under [§ 501] is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "A proof of claim signed and filed in accordance with the [Federal Rules of Bankruptcy Procedure] is *prima facie* evidence of the claim's validity and amount." FED. R. BANKR. P. 3001(f). "Multiple courts and commentators also require that a proof of claim 'allege facts sufficient to support the claim.'" *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 543 (Bankr. D. Del. 2016) (citing *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); 4 COLLIER ON BANKRUPTCY ¶ 502.02[1][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *Hilton v. Hongisto (In re Hongisto)*, 293 B.R. 45, 50 (N.D. Cal. 2003) ("a claim is not *prima facie* valid . . . unless the claimant has alleged facts sufficient to support a legal liability" (internal quotations omitted))). "In determining whether a proof of claim contains sufficient allegations, a reviewing court will assume the allegations are true and ask whether the facts establish the necessary elements of a claim." *Id.* at 544 (citations omitted). Courts suggest the proof of claim pleading standard is a "relatively low threshold," less burdensome than the federal civil pleading standard. *Id.*; *see also* FED. R. CIV. P. 12(b)(6). While not a uniform standard, courts have also stated "[a]s long as [a proof of claim provides] fair notice . . . and the court can glean an actionable claim from the complaint, the court must entertain the party's case." *Id.* (citing *In re O'Malley*, 252 B.R. 451, 456 (Bankr. N.D. Ill. 1999)).

In the event Mr. Berger satisfied this initial burden, the Debtors as objectors bore the burden of producing sufficient evidence to rebut his *prima facie* case. "An objector can meet this burden of production by 'produc[ing] evidence equal in force to the *prima facie* case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'" *Id.* (citing *In re Allegheny Intern., Inc.*, 954 F.2d at 173–174). If the Debtors produced such evidence, the burden reverts back to Mr. Berger to prove the validity of his claim by a

preponderance of the evidence. *In re Fidelity Holding Co., Ltd.* 837 F.2d 696, 698 (5th Cir. 1988).

The court is to allow a claim except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable laws for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). The court must look to applicable non-bankruptcy law to determine the allowability of a claim.

## DISCUSSION

### I.   MR. BERGER'S CLAIM IS *PRIMA FACIE* VALID IN PART.

The Court's first inquiry is to determine whether Mr. Berger's proof of claim contains sufficient allegations to establish its *prima facie* validity. If the answer to that question is yes, the Court must determine whether the Debtors rebutted the validity of Mr. Berger's filed claim. If the answer is no, then Mr. Berger's claim must be disallowed.

Box number 8 of Official Proof of Claim Form 410 asks "[w]hat is the basis of the claim?"[55]   Mr. Berger provided in response "Wages earned (state court judgment), undistributed profits."[56]   Mr. Berger describes himself in the proof of claim form as "Judgment creditor in state court case."[57]   The proof of claim contains four attachments: (i) an explanation of basis for proof of claim (described in the table laid out *supra*); (ii) the state-court judgment based on the verdict in the California Litigation; (iii) the joint special verdict form from the California Litigation; and (iv) a copy of a purported operating agreement of Toco Holdings, dated as of November 1, 2018, which contains a purported profit sharing agreement structure attached as exhibit A.[58] The table within the explanation of basis for proof of claim indicates Mr. Berger is asserting amounts based on the $1,518,799.00 California state

---

[55] ECF No. 78-1 Ex. A at 3.
[56] *Id.*
[57] *Id.* at 4.
[58] *See generally* ECF No. 78-1 Ex. A.

court judgment, attorney's fees from that case, attorney's fees from the Debtors' current bankruptcy case, and a percentage of the Debtors' annual profits from 2021 through 2032, presumably pursuant to the attached purported profit-sharing structure.[59]

### A.   State Court Judgment, Breach of Profit-Sharing Agreement and Fraudulent Transfer Components.

Starting with the $1,518,799.00 amount reflecting the California state court judgment, the verdict Mr. Berger attached to his proof of claim verifies this unsecured claim in such amount. The Debtors do not dispute this component of the proof of claim in their Objection and Reply. Accordingly, the $1,518,799.00 portion of the proof of claim is *prima facie* valid and entitled to allowance and will not be further analyzed in this opinion.

Vis-à-vis the attached state-court judgment—finding for Mr. Berger on his "breach of contract claim (good faith and fair dealing)", Mr. Berger appears to suggest that he is entitled to the purported *profit-sharing* amounts reflected in his proof of claim.[60] But none of the attachments state that Mr. Berger received a judgment based on any profit-sharing or fraudulent transfer claims he may have against the Debtors.[61] Instead, evidence admitted for the purpose of objecting to the claim—namely, the originally filed complaint from the California Litigation, the Motion for Continuance, and the voluntary motion to dismiss Mr. Berger's Dismissed Causes of Action—reveals Mr. Berger originally brought breach of contract claims both for breach of an employment agreement and for breach of the purported profit-sharing agreement.[62] However, Mr. Berger voluntarily dismissed the breach of profit-sharing agreement claim, and therefore the judgment he obtained in the California Litigation on his "breach of contract (good faith and fair dealing) claim" was only ever for his breach of employment contract

---

[59] *Id.* at 5.

[60] *Id.* at 6–16.

[61] *Id.*

[62] ECF No. 78-2 Ex. B; ECF No. 78-3 Ex. C; ECF No. 78-4 Ex. D.

claim.[63]  Therefore, it is somewhat misleading that Mr. Berger filed his proof of claim asserting amounts for breach of profit-sharing "based on the state-court judgment" which reflects an unspecified claim for "breach of contract," despite Mr. Berger never actually having tried that claim in the California Litigation.

Nonetheless, this Court is not of the view that any purported breach of profit-sharing agreement or fraudulent transfer claims Mr. Berger may possess are merged into the California state-court judgment; Mr. Berger is not necessarily precluded from bringing those claims at some point in the future.[64]  After reviewing Mr. Berger's original factual and legal allegations regarding those claims the Court was able to glean that he *may* have actionable claims for breach of the purported profit-sharing agreement and fraudulent transfers, both of which may entitle him to pre-judgment and post-judgment profits in the event those claims prove successful.[65]  These allegations satisfy the "relatively low threshold" necessary to establish the *prima facie* validity of his claim under Rule 3001(f), and shift the burden to the Debtors to negate one of the essential elements of those purported claims.  *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. at 543; FED. R. BANKR. P. 3001(f).

### B.  Attorney's Fees Components.

With respect to both attorney's fees components of Mr. Berger's proof of claim, Mr. Berger did not attach any state-court judgment, motion, or statute providing he or his counsel were entitled to such fees.[66]  In a fashion similar to his purported claims for breach of the profit-sharing agreement and fraudulent transfers, Mr. Berger appears to suggest that by virtue of the state-court judgment, he or his counsel maintain an entitlement to such fees despite not asserting the factual or legal basis for those claims in his proof of claim form.[67]  In his Response,

---

[63] ECF No. 88-3 Ex. 3.
[64] *See infra* notes 75–79.
[65] ECF No. 78-4 Ex. D.
[66] ECF No. 78-1 Ex. A.
[67] *See id.*

Mr. Berger maintains that the state-court judgment found for him on his non-dismissed indemnification claim.[68]  But the judgment merely states "attorney fees, if allowed by law, will be decided by motion to be filed per the relevant section(s) of the Code of Civil Procedure."[69]  To clarify, this statement in the state-court judgment does not find for Mr. Berger on his indemnification claim, nor does it ensure he or his counsel are, as a matter of law, entitled to such fees.[70]  Nor was any additional evidence admitted showing Mr. Berger ever filed said post-judgment motions.  As the judgement expressly provides, if Mr. Berger or his counsel were entitled to attorney's fees as a matter of law, that issue would be decided by post-judgment motion in the relevant jurisdiction, subject to the California Code of Civil Procedure.[71]

While the state-court judgment suggests that pre-petition attorney's fees were at one point obtainable, no determination of the Debtors' liability for those fees ever occurred, nor were fees calculated or awarded prior to the commencement of the Debtors' bankruptcy proceedings and the intervention of the automatic stay.  Commencement of the bankruptcy proceedings eliminated the possibility that the award of pre-petition attorney's fees would come to fruition—absent this Court granting relief from stay to pursue those fees.  *In re Drexel Burnham Lambert Grp., Inc.*, 148 B.R. 979, 981 (Bankr. S.D.N.Y. 1992).  Therefore Mr. Berger does not have an enforceable right to payment for pre-petition attorney's fees, and that portion of his proof of claim falls squarely within the purview of § 502(b)(1) necessitating disallowance.  11 U.S.C. § 502(b)(1).  Mr. Berger similarly provides no basis to prove an enforceable claim for attorney's fees associated with work in the Debtor's bankruptcy proceedings.[72]  This component constitutes an unenforceable claim against the Debtors within the meaning of § 502(b)(1) as well, meaning disallowance is also warranted.  *Id.*  Indeed,

---

[68] ECF No. 88 at 4.

[69] ECF No. 88-5 Ex. 4.

[70] *See id.*

[71] *Id.*

[72] *See generally* ECF No. 78-1 Ex. A; ECF No. 88.

"without a right to payment, Mr. Berger has no claim" for either of those amounts. *In re Drexel Burnham Lambert Grp., Inc.*, 148 B.R. at 981; 11 U.S.C. § 101(5)(a).

## II.     THE DEBTORS REBUTTED THE VALIDITY OF MR. BERGER'S CLAIMS IN PART.

Because the profit-sharing component of Mr. Berger's proof of claim must be considered *prima facie* valid under Rule 3001(f), the Court must next determine whether the Debtors successfully rebutted the validity of Mr. Berger's purported claims.  The Debtors objected to the purported breach of profit-sharing agreement and fraudulent transfer claims serving as the basis for those amounts in the proof of claim because those claims were voluntarily dismissed from the California Litigation, and under California principles of res judicata may not be re-litigated at a future date.[73]  The Debtors also object to the profit-sharing component on grounds that Mr. Berger failed to assert the factual context, origin, and basis of asserted liability for those claims.[74]

In the Court's view, principles of res judicata do not necessarily preclude Mr. Berger from pursuing his alleged breach of profit-sharing agreement and fraudulent transfer claims.  Because Mr. Berger failed to assert the alleged basis for liability against the Debtors, however, the Court finds that the Debtors effectively rebutted the validity of those claims.  Accordingly, those components of Mr. Berger's proof of claim must be disallowed.

### A.     Res Judicata Principles Do Not Bar Mr. Berger's Purported Profit Sharing or Fraudulent Transfer Claims.

Under the Full Faith and Credit Act and the United States Constitution, a State's "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State."  28 U.S.C. § 1738; U.S.

---

[73] ECF No. 92 at ¶ 12.

[74] *Id.* at ¶ 18.

15 / 24

CONST. art. IV, § 1; *see also Matter of Porretto*, 761 Fed.Appx. 437, 441 (5th Cir. 2019).  This Court must therefore attribute any preclusive effect warranted by entry of final judgment in the California state court to Mr. Berger's proof of claim, and the result will inform whether the validity of the profit-sharing component of Mr. Berger's claim has been rebutted.

> As generally understood, "[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." [] The doctrine "has a double aspect." [] "In its primary aspect," commonly known as claim preclusion, it "operates as a bar to the maintenance of a second suit between the same parties on the same cause of action." [] "In its secondary aspect,' commonly known as collateral estoppel, "[t]he prior judgment . . . 'operates'" in "a second suit . . . based on a different cause of action . . . 'as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.'" [] "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (i) [a] claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (ii) the prior proceeding resulted in a final judgment on the merits; and (iii) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding."

*Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 348 (Cal. 2010) (citing *People v. Barragan*, 83 P.3d 480 (Cal. 2004)) (internal citations omitted) (original emphasis).

With respect to the claim preclusion aspect of res judicata, California courts have "consistently applied the 'primary rights' theory" to determine whether two proceedings involve identical causes of action. *Id.* (citing *Slater v. Blackwood*, 543 P.2d 593 (Cal. 1975)).  Under the primary rights theory, "[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests."  *Id.*

16 / 24

(citing *McKee v. Dodd*, 93 P. 854 (Cal. 1908)).  The term "cause of action" as used by California courts for res judicata purposes has a precise meaning: "[t]he cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced.  *Id.* (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 855 P.2d 1263 (Cal. 1993)). "Thus, under the primary rights theory, the determinative factor is the harm suffered" rather than the legal ground for relief pursued.  *Id.* "When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right."  *Id.* (citing *Argarwal v. Johnson*, 603 P.2d 58 (Cal. 1979)).

Here, element three of res judicata is met because Mr. Berger and the Debtors are the same Parties previously involved in the California Litigation.  Mr. Berger is correct in his general assertion that "a voluntary dismissal without prejudice is not a final judgment on the merits" for purposes of collateral estoppel.  *Syufy Enters. V. City of Oakland*, 104 Cal.App.4th 869, 879 (Cal. Ct. App. 2002) (citing *Associated Convalescent Enters. V Carl Marks & Co., Inc.*, 33 Cal.App.3d 116, 121 (Cal. Ct. App. 1973)); *see also Harris County v. Gambichler*, 479 S.W.3d 514, 516 (Tex. Ct. App. 2015) ("Dismissal of a claim without prejudice does not prevent the filing of a subsequent action based on that claim" for purposes of res judicata.).[75]  Collateral estoppel is not necessarily relevant to the current dispute because the Court does not currently bear the task of parsing certain issues previously litigated to determine the scope of preclusion warranted here. Indeed, no record or transcript of the California Litigation was admitted by either Party to apprise the Court of any relevant profit-sharing issues that may have been litigated there.

---

[75] The Parties cite both Texas and California cases with respect to their articulations of res judicata and collateral estoppel doctrine.  ECF No. 88 at 3; ECF No. 92 at ¶ 13.  This Court, however, is tasked with determining the preclusive effects of the California state court judgment solely under California state law pursuant to the Full Faith and Credit Act.  28 U.S.C. § 1738.

Rather, the Court must address the more nuanced claim preclusion-based question of whether, under California law, a final judgment on purportedly overlapping claims based on the same primary right forecloses reviving voluntarily dismissed claims from the same dispute. *See DKN Holdings LLC v. Faerber*, 352 P.3d 378, 387 (Cal. 2015) ("Under issue preclusion, the prior judgment conclusively resolves an issue *actually litigated and determined* in the first action.") (emphasis added). If Mr. Berger's voluntarily dismissed claims and his judgment claims are based on the same primary right, then under California law they constitute the same singular cause of action for purposes of res judicata, and any final judgment on the merits of that singular cause of action would preclude future suits based on claims derived from that primary right. *Boeken*, 230 P.3d at 348. Therefore, element two of res judicata is contingent on a determination of element one, and element one and the Court's "primary right" analysis serves as the crux for the current dispute.

Restated for clarity, the Court must determine whether the "causes of action" Mr. Berger litigated to finality in the California Litigation for breach of contract (good faith and fair dealing), promissory fraud, and indemnification constitute the same primary right as his Dismissed Causes of Action—namely, his voluntarily dismissed actions for profit sharing and fraudulent transfers—corresponding to those amounts reflected in his proof of claim. In the Court's view, the answer to that question is no.

The California Supreme Court's primary rights analysis in *Boeken* is instructive. 230 P.3d at 348–49. There, a plaintiff previously brought a common law action for loss of consortium, alleging a defendant's "wrongful conduct 'permanently deprived' her of her husband's companionship and affection." *Id.* at 349. The court explained the plaintiff's cause of action by articulating the plaintiff's primary right, the corresponding duty to that right, and the alleged breach of that duty. *Id.* at 349. The primary right in the loss of consortium action "was the right not to be wrongfully deprived of

spousal companionship and affection," which created the "corresponding duty not to wrongfully deprive a person of spousal companionship and affection," and the alleged breach "was the conduct of defendant [] that wrongfully induced [the] plaintiff's husband to smoke defendant's cigarettes" which allegedly lead to his death. *Id.*

As with Mr. Berger here, the record in *Boeken* did not indicate the plaintiff's reason for dismissing her first loss of consortium lawsuit. *Id.* The court clarified that "whatever the reason may have been for dismissing that action, the relevant point for our purposes if what plaintiff there *alleged*, because that allegation indicates what primary right was adjudicated as a consequence of the dismissal with prejudice." *Id.* Here, the procedural posture is slightly different because rather than having certain claims dismissed with prejudice, this case involves claims voluntarily dismissed without prejudice coupled with non-dismissed claims adjudicated to finality. The key in this instance is observing what primary right was associated with those non-dismissed claims and comparing it with the primary right associated with the Dismissed Causes of Action in order to parse whether those two sets of claims implicate the same primary right. A review of the original complaint filed in the California Litigation indicates that is not the case.

Following the *Boeken* court's primary rights analysis of articulating the relevant "right, duty, and breach," Mr. Berger's primary right with respect to his breach of employment contract claim was his right to the benefit of the bargain under his employment contract—namely, employment under the terms of the Parties' agreement, compensation in the form of his salary, and the Debtors' good faith participation and fair dealing with respect to the terms of that agreement.[76] The corresponding duty imposed on the Debtors was the

---

[76] Without getting into the substantive legal basis for his breach of employment claim, the operative allegations for that count were *inter alia* (i) Mr. Berger and the Debtors entered into a partially written, partially oral employment contract, where Mr. Berger was to receive a salary in exchange for rendering services to Toco Warranty and assigning the Toco Warranty offering to Toco Holdings, (ii) Mr. Berger fully performed, (iii) Toco Warranty breached that agreement by making false

duty to honor the terms of the contract. Breach constituted breaching the implied covenant of good faith and fair dealing. The primary right associated with Mr. Berger's alleged promissory fraud claim was his right to reasonably rely on the Debtors' representations to enter into the employment contract and profit-sharing contract.[77] The Debtors' duty was to not induce Mr. Berger to agree to a contract based on an allegedly false promise.

In comparison, Mr. Berger's primary right with respect to his alleged breach of profit-sharing agreement claim was the right to the benefit of the bargain under the profit-sharing agreement—namely, compensation pursuant to the terms of the profit-sharing agreement, and the Debtors' good faith participation and fair dealing with respect to the terms of that contract.[78] The Debtors' duty was to honor the terms

representations and threats to Mr. Berger resulting in his constructive termination from employment with Toco Warranty that were both a breach of the express terms of the Parties' agreement or alternatively a breach of covenant of good faith and fair dealing, (iv) that breach was a substantial factor in bringing about the harm suffered by Mr. Berger. ECF No. 78-4 Ex. D at ¶¶ 46–52. The special verdict form indicates that the jury concluded a breach of the covenant of good faith and fair dealing occurred on the part of the Debtors with respect to the breach of employment contract claim. ECF No. 88-4 Ex. 3 at 4–6.

[77] The operative allegations for the promissory fraud claim were *inter alia* (i) in order to induce Mr. Berger to assign his valuable opportunity to purchase Toco Warranty, Mr. Berger and Toco Holdings entered into a profit sharing agreement, whereby in exchange for consideration, Toco Holdings agreed to pay Berger 20% of its profits until the purchase price was repaid and thereafter 30% of its profits in addition to a salary associated with acting as CEO of Toco Warranty (ii) in reliance on the Debtors representations, Mr. Berger assigned his rights to Toco Holdings, accepted the positions of manager of Toco Holdings and CEO of Toco Warranty, and performed work for both, (iii) the Debtors' promise to share in profits and maintain a relationship with Mr. Berger as CEO of Toco Warranty were false when made, (iv) Mr. Berger's reliance on the Debtors' statements was reasonable, (v) as a result of the Debtors' representations Mr. Berger was injured in the value of the lost opportunity to purchase Toco Warranty in an amount to be proven at the time of trial. ECF No. 78-4 Ex. D at ¶¶ 92–103.

[78] The operative allegations for Mr. Berger's dismissed breach of profit-sharing agreement claim were *inter alia* (i) Mr, Berger and Toco Holdings entered into a partially written and partially oral profit sharing agreement contract, whereby in exchange for consideration, Toco Holdings agreed to pay Mr. Berger 20% of its profits until the purchase price was repaid and thereafter 30% of its profits, (ii) Mr. Berger fully performed under the contract, (iii) Toco Holdings breached the contract by failing

of the agreement. The alleged breach was the Debtors' alleged failure to deal fairly and in good faith with Mr. Berger under that contract. Mr. Berger's primary right with respect to his alleged fraudulent transfer claim was his right to profits pursuant to the profit-sharing agreement— or more accurately, his right to be free from fraudulent transfers of funds he was allegedly entitled to under that agreement.[79] The duty on the Debtors was to not wrongfully transfer Mr. Berger's funds between entities for less than reasonably equivalent value. The alleged breach occurred when the Debtors allegedly underwent such fraudulent transfers and also allegedly refused to provide Mr. Berger with certain funds he was allegedly entitled to pursuant to the agreement.

While the primary rights under the breach of profit-sharing agreement and fraudulent transfer claims appear identical, the harms associated with those alleged claims differ from the harms associated with Mr. Berger's breach of employment contract claim and alleged fraudulent inducement claim. All claims are factually related because all derive from Mr. Berger's employment and relationship with both Debtor entities. Based on the allegations in the original complaint, however, the breach of employment claim was not contingent on the breach of profit-sharing or fraudulent transfer claims, and vice versa. Each had separate factual allegations that allegedly caused Mr. Berger different respective harms and precipitated different claims. Further, a

---

to pay Mr. Berger any share of the profits of Toco Holdings in both a breach of the express terms of the parties' agreement or alternatively, a breach of the covenant of good faith and fair dealing, (iv) Toco Holdings further breached that contract by rejecting payments made from Toco Warranty that would have increased Mr. Berger's profit share, and by accounting for profits by false and/or misleading methods both of which were designed and performed for the purpose of depriving Mr. Berger of the benefit of his profit share. ECF No. 78-4 Ex. D at ¶¶ 53–61.

[79] The operative allegations for Mr. Berger's dismissed fraudulent transfer claim were *inter alia* (i) Mr. Berger had a right to profit share distributions from Toco Holdings, (ii) Toco Warranty and Toco Holdings transferred and received funds between one another and between other parties, for which each did not receive equivalent value in exchange, which funds included profits known by Toco Warranty and Toco Holdings to belong to Mr. Berger, (iii) as a result of those alleged fraudulent transfers, Mr. Berger sustained damages which the Debtors' conduct was a substantial factor in causing. ECF No. 78-4 Ex. D at ¶¶ 62–68.

claim based on fraudulent inducement typically involves a separate, distinct harm than that associated with a more straightforward breach of contract dispute. This is highlighted by the fact that the jury found for Mr. Berger on his breach of employment contract claim, but not on his fraudulent inducement claim.[80]

Accordingly, this Court is not of the view that the voluntarily dismissed breach of profit-sharing agreement and fraudulent transfer claims Mr. Berger purportedly references in his proof of claim implicate the same primary right as those claims he litigated to finality in the California Litigation. Thus, those claims' *prima facie* validity is not rebutted on grounds of res judicata alone.

Aside, the Motion for Continuance has no necessary preclusive effect here either. Mr. Berger manifested to the Texas state court that the California Litigation would resolve "all outstanding issues between the [P]arties," meaning that the California Litigation *as it existed at the time the Motion for Continuance was filed* would resolve each of the disputes within that lawsuit, which also encompassed the same three causes of action then being litigated in the Texas Litigation.[81] Certain causes of action—namely, Mr. Berger's claims for breach of the profit-sharing agreement and fraudulent transfers—were, however, unique to the California Litigation.[82] At that point in time, it was true that the California Litigation would resolve all the Parties' then-existing disputes; but dismissal of the Voluntarily Dismissed Causes of Action negated that possibility. Therefore, those claims were never "resolved" within the meaning of the Motion for Continuance. Accordingly, claim preclusion cannot rightly be implicated as to those dismissed claims. Neither Party briefed the possible effect of judicial estoppel, and the

---

[80] ECF No. 88-5 Ex. 4 at 3 (stating "That [Toco Holdings] made a promise to [Mr.] Berger; [and] [t]hat, when making the promise, [Toco Holdings] intended to fulfill it.").

[81] ECF No. 78-2 Ex. B at 3 ¶ 3.

[82] *Id.*

Court believes review of that issue is not warranted to adjudicate the current dispute.

### B.    The Profit-Sharing Agreement and Fraudulent Transfer Components Lack a Factual Basis for Amounts and Liability.

The Debtors correctly point out that Mr. Berger did not assert the basis for calculating the round-number projections reflecting his alleged profit-sharing entitlements between the years 2021 through 2032.[83] Mr. Berger attached to his proof of claim the purported operating agreement and the structure of the purported profit-sharing agreement.[84] The amounts reflected in the proof of claim do not correspond to any express accounting periods, scheduled distributions, or financial data of the Debtors.[85] More generally, Mr. Berger failed to reference or admit any additional basis for the asserted amounts of profits he is allegedly entitled to—outside of allegations from the California Litigation and the Voluntarily Dismissed Causes of Action therein. Therefore, Mr. Berger failed to demonstrate liability exists for the profit-sharing amounts within the proof of claim, both on a pre-judgment and post-judgment basis. He further failed to demonstrate the means of calculating any pre-judgment or post-judgment amounts, leaving the Court incapable of accurately determining the amount of any purported claim he may have, as is required by § 502(b). 11 U.S.C. § 502.

In sum, the claim objection process revealed baseline allegations of previously dismissed claims which effectively put the Debtors and Court on notice of purported breach of profit-sharing agreement and fraudulent transfer claims Mr. Berger may have against the Debtors, meeting a relatively low threshold to prove the *prima facie* validity of those amounts in his proof of claim. The Debtors produced evidence of equal force to rebut the validity of Mr. Berger's tenuous pleading by simply showing that Mr. Berger submitted no adequate basis to prove

---

[83] ECF No. 92 at ¶¶ 17–18; *see generally* ECF No. 88.
[84] ECF No. 78-1 Ex. A. at 17–44.
[85] *Id.*

liability on the part of the Debtors, or a means of accurately calculating the round-number projections in his proof of claim. The burden of persuasion shifted back to Mr. Berger, then, who did not admit any further evidence beyond that contained in his proof of claim and Response. No additional evidence—beyond that already considered in the claim objection process—was admitted with respect to this dispute at the confirmation hearing. In the Court's view, Mr. Berger failed to meet his burden with respect to the profit-sharing components of his proof of claim. The Court therefore must disallow certain portions of Mr. Berger's claim, including all portions corresponding to his profit-sharing and fraudulent transfer claims, his claim for attorney's fees from the California Litigation, and his claim for attorney's fees in the Debtors' current bankruptcy case.

## CONCLUSION[86]

For the foregoing reasons, the Court sustains the Debtors' Objection to Mr. Berger's proof of claim, disallowing the claim in part, and allowing in part the $1,518,799.00 unsecured state court judgment component. Counsel for the Debtors is directed to settle an order consistent with this opinion within 14 days.

Signed: April 08, 2026

Alfredo R Pérez
United States Bankruptcy Judge

---

[86] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.